IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE and JANE DOE, for themselves and on
behalf of JIMMY DOE, their minor child,

                                Plaintiffs,        Hon. _____

v.                                            No. _____

GRANDVILLE SCHOOL DISTRICT,
RON CANIFF, Former District Superintendent in his
official capacity, ROGER BEARUP, Current
District Superintendent in his Official Capacity;
SCOTT MERKEL, Assistant Superintendent
in his Official Capacity, TONIA SHOUP, Principal
in her Official Capacity, and HILLARY HUBERTS,
Teacher, in her Official Capacity.

                                Defendants.
_____/

Anne Buckleitner (P59832)
Attorney for Plaintiffs
Smietanka, Buckleitner, Steffes and Gezon
4250 Chicago Drive, S.W., Suite B
Grandville, MI  49418
616/667-2217
ALB@SmietankaLaw.com

## COMPLAINT AND JURY DEMAND

*Kindergartener Jimmy Doe was sexually assaulted over multiple months by classmates in their teacher-attended classroom. His assailants photographed the assaults using their school-issued iPads. Jimmy was harassed by the many students who heard about and viewed the photographs of his assaults on their iPads, ultimately driving Jimmy from the District. Defendants' gross negligence in supervising the classroom and their deliberate indifference in investigating and responding to the assaults subjected Plaintiff to further sexual harassment and a hostile environment, effectively denying him access to educational opportunities. This action alleges violations of Title IX and the denial of equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, as well as a pendent claim of gross negligence.*

Plaintiffs John and Jane Doe, for themselves and their minor child, Jimmy Doe,[1] by and through attorney Anne Buckleitner of SMIETANKA, BUCKLEITNER, STEFFES & GEZON, hereby files the following complaint against Defendants:

## I. JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3.      Plaintiffs bring this action to redress a hostile educational environment pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein.

4.      This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

---

[1] "John, Jane and Jimmy Doe" have been substituted for Plaintiffs' names for all causes of action brought through this Complaint. Jimmy Doe is and was a minor at the time of the sexual assaults and aftermath complained of herein, and the caption is intended to protect his privacy.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside or resided in this district and the events giving rise to the claims occurred in this district.

## II.  THE PARTIES

6.      Plaintiff JIMMY DOE is a minor male born in 2009.  He is represented in this action by his parents, JOHN and JANE DOE, who also bring this action on their own behalf.

7.      At all material times Plaintiffs were residents of the County of Kent, State of Michigan.

8.      At the time of events complained of herein, Plaintiff was a student attending the Century Park Learning Center within the Defendant GRANDVILLE SCHOOL DISTRICT ("the School District").

9.      The Defendant School District is a public educational institution located in the County of Kent, State of Michigan.

10.      Until July 2015 Defendant RON CANIFF ("Former Superintendent Caniff") worked within the County of Kent, State of Michigan.

11.      Until July 2015 Former Superintendent Caniff was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

12.      Defendant GEORGE BEARUP ("Superintendent Bearup") worked within the County of Kent, State of Michigan, effective July 2015.

13.     Since July 2015, Superintendent Bearup has been an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

14.     Defendant SCOTT MERKEL ("Assistant Superintendent Merkel") worked within the County of Kent, State of Michigan, for the Defendant District as its "Anti-Harassment Compliance Officer."

15.     During all material times, Defendant Merkel was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of his employment and his employer.

16.     Defendant TONIA SHOUP ("Principal Shoup") worked within the County of Kent, State of Michigan as the principal of Century Park.

17.     During all material times, Principal Shoup was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

18.     HILLARY HUBERTS ("Teacher Huberts") worked within the County of Kent, State of Michigan, and was the kindergarten teacher responsible for supervising Jimmy Doe's classroom.

19.     During all material times, Teacher Huberts was an agent and/or employee of Defendant School District, acting or failing to act within the scope, course, and authority of her employment and her employer.

### III.  APPLICABLE LAW AND POLICY

20. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C.

§ 1681(a), states that

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . .

21. Title IX is implemented through the Code of Federal Regulations.  See 34 C.F.R. Part 106.

22. 34 C.F.R. § 106.8(b) provides:

> . . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

23. In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

24. In *Davis v. Monroe County Bd. Of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

25. *Davis* held that a complainant may prevail in a private Title IX damages action against a school board in cases of student-on-student harassment where the funding recipient is

> a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and
> b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669–76.

26. The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

27. The School District's Board of Education has also adopted an anti-harassment policy prohibiting discriminatory harassment, stating that all allegations of unlawful harassment will be investigated, and that all school staff and personnel share responsibility for reporting any form of unlawful harassment.

28. The School District's Anti-Harassment Policy further requires all members of the School District community to report incidents of harassment reported to them to the Compliance Officer within two (2) business days of learning of the incident.

29. The School District's "Acceptable Use Policy of Technology Resources" for students from Preschool to Grade 3 informs students that "the school can see everything that [students] do on the computers, electronic devices, and internet," reminds them not to use any of the District's technology "to bully or harm any other person," and acquires parental consent to monitor and inspect each child's use of technology resources.

### IV.  COMMON ALLEGATIONS

30. At all material times, the School District was receiving federal funding, as contemplated by Title IX, 20 U.S.C. § 1681, *et seq*.

31. The School District implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

32. The School District is responsible for ensuring that all its employees are properly trained and supervised to perform their jobs.

33. The School District is responsible for the acts and omissions of its employees.

34. Before beginning kindergarten in the School District, Jimmy was a successful and happy preschooler.

35. At the time of the events complained of herein, Jimmy Doe was between 5 to 7 years of age, and was a Kindergartener in Teacher Huberts' classroom in both the 2014/2015 and 2015/2016 school years.

36. The District provided iPads for use by each kindergartener in Teacher Huberts' classroom.

37. On multiple occasions during the 2014/2015 school year, but on information and belief beginning as early as the fall of 2014 and continuing until around April 22, 2015, while Teacher Huberts attended the classroom's "free time," four male kindergarteners,[2] took Jimmy Doe to the 'mudroom' area of the classroom where they touched, sodomized him, and preserved widely available evidence of those assaults by photographing Jimmy's genitals using classroom iPads.

38. The four boys directed Jimmy as to what and how he was to pose, and for how long while the boys used classroom iPads to take photographs.

39. The assailants filled the camera roll of the iPads with pictures taken during their assaults on Jimmy, and, on information and belief, continuously deleted

---

[2] "JB," "EH," "LH," and "AR."

photographs to create space for additional photographs each time they

attacked Jimmy.

40. The assailants told Jimmy that if he did not cooperate with them, or if he
'told' about the touching and pictures, they would not be his friends, and they
would say that the sexual activity was Jimmy's idea,

41. Jimmy's parents noticed from the beginning of the 2014/2015 school year that
their son was not adjusting well to kindergarten, was not learning, and was
both physically and emotionally deteriorating.

42. During an October 2014 parent/teacher conference, Jimmy's parents raised
concerns about Jimmy's apparent failure to adapt with Teacher Huberts and
asked her to watch for teasing.

43. During November and December of 2014 Jimmy's behavior became
increasingly unstable; Jimmy told his parents only that he didn't like school
because all other students teased him about his "pictures."

44. Jimmy's parents told Teacher Huberts that Jimmy had told them he was being
teased about his "pictures," but Teacher Huberts said that she had noticed
nothing amiss in the classroom, and complimented Jimmy's artwork.

45. Jimmy's physical and mental health continued to decline throughout the
school year, and his parents actively sought a medical explanation for his
decline, while apprising Teacher Huberts of his testing and asking her to
continue to be aware of classroom teasing.

46. On April 22, 2015, Principal Shoup called Jimmy's mother and told her that
Teacher Huberts had noticed a student hiding the screen of his iPad as she

walked by.  She asked to see the iPad and found that its camera roll was full of photographs of Jimmy's genitals taken over the past three weeks, taken both before and after Spring Break 2015, showing Jimmy in various poses.

47. Principal Shoup telephonically told Jimmy's mother that another child, JH, upon seeing that Teacher Huberts had noticed the iPad photographs, began deleting photographs on his own iPad, but Teacher Huberts was able to take the iPad before the pictures were entirely deleted.

48. Principal Shoup telephonically advised Jimmy's mother that she had interviewed Jimmy and the four boys involved in taking the photos, and that the four boys said that it had been Jimmy's idea to display his genitals in the classroom, and that Jimmy had admitted to showing his 'privates' and to having his picture taken.

49. Jimmy's mother told the principal that she wanted further investigation, and asked that the photographs not be destroyed.  She also asked that the police and Child Protective Services be contacted, and ended the telephone call.

50. Jimmy's mother arrived at the school within 10 minutes of the call from the Principal.

51. Upon arrival at the school, Principal Shoup told Jimmy's mother that her investigation was already complete.

52. Principal Shoup told Jimmy's mother that for her investigation she had interviewed Teacher Huberts, Jimmy, and the four boys who had taken the photos and sodomized Jimmy, and that she found no indication of coercion or assault.

53. Immediately after speaking with Principal Shoup, Jimmy's mother talked privately with Jimmy, talked privately with teacher Huberts, and spoke again with Principal Shoup.

54. Jimmy was distraught and confirmed to his mother that these were "the pictures" that the students in his class had seen and had been teasing him about, and that they had made him pose for the pictures or they would not be his friend.

55. Jimmy also told his mother that when the four boys realized the Principal would be speaking with each of them, the boys had told him what he was to say to her or else he would have no friends and they would say it was all his idea.

56. Jimmy's mother emphasized to Principal Shoup that Jimmy had told her that the other boys had told him what to tell the principal or else he would be ostracized, that he had been forced to take his pants down and to allow picture taking, fondling, and sodomization under the threat of being friendless, and that the touching and photographs had not been his idea.

57. Jimmy's mother again told Principal Shoup that the pictures should not be deleted as she wanted to review them and that they were potential evidence.

58. Principal Shoup told Jimmy's mother that the pictures were 'pornographic' and that Jimmy's parents could not review them, and stated that the police had directed her to erase them.

59. Jimmy's mother asked Principal Shoup in the alternative to have the pictures reviewed by the police for corroborating indicia of coercion or dissemination around the school or the internet.

60. According to a police report prepared about the incident, Principal Shoup did make contact with the police, but assured the officers that she had contacted them only because Jimmy's mother had demanded it; she had already conducted a complete investigation; she assured the police that the photos had not been coerced or disseminated; she had already deleted the photos, and; no further investigation was necessary.

61. Principal Shoup declined to identify the four assailants to the police.

62. Several days later, Jimmy's parents met with Superintendent Caniff and Assistant Superintendent Merkel to review Jimmy's classroom abuse and the school's response.

63. Jimmy's parents told the school administrators that Jimmy's physical, emotional, and academic decline coincided with the abuse, that they had spoken with Teacher Huberts multiple times throughout the year, and the teacher had always denied that anything was amiss in the classroom.

64. Superintendent Caniff and Assistant Superintendent Merkel told the parents that the pictures had been deleted and that they could move Jimmy to another school in the district, if they wanted.

65. Superintendent Caniff and Assistant Superintendent Merkel also stressed that the pictures needed to be viewed in the context of kindergarteners' normal curiosity, and suggested that if the parents insisted on pressing the matter,

Jimmy would be the one to be disciplined as he was the only child whose genitals were photographed.

66. Superintendent Caniff and Assistant Superintendent Merkel said that there were no policies in place requiring teacher Huberts to check pictures taken by students on their school iPads, and that they had been unaware that use of technology in this manner could be a problem in this age group.

67. Neither Superintendent Caniff and Assistant Superintendent Merkel mentioned to Jimmy's parents that they had any rights under Title IX with regard to the Principal's investigation or appeal of her findings.

68. Jimmy's parents immediately withdrew Jimmy from school for the remainder of the 2014/2015 school year.

69. In 2015/2016 school year, Jimmy repeated Kindergarten in the Grandville district, while the four assailants went on to first grade.

70. After having made a slight recovery during the summer of 2015, Jimmy's parents saw that his health and emotional stability again deteriorated throughout the 2015/2016 schoolyear.

71. During his second year of kindergarten in 2015/2016, Jimmy was continually victimized on the playground by students who had seen and knew of his 'pictures' from the prior year.

72. On the playground other children tried to catch Jimmy, take down his pants, and tried to bribe him to "show [his] privates."

73. Jimmy spent the majority of each playground recess in hiding places that he dug beneath play structures where he would cover himself with mulch.

74. On numerous occasions using telephone, email, and personal meetings throughout the 2015-2016 school year, Jimmy's parents advised School District officials that Jimmy was being victimized at school, and asked that they protect him.

75. In the fall of 2015, Jimmy's only friend, "C," also told Principal Shoup that he and Jimmy were being harassed on the playground, and she temporarily stopped the harassment, but after a few days it resumed.

76. Jimmy Doe did not have a safe educational environment in the Defendant School District; his health and spirit were damaged and his education was disrupted.

77. School District officials, including Teacher Huberts, Principal Shoup, Assistant Superintendent Merkel, Superintendent Caniff, and Superintendent Bearup made no changes to the educational environment to stop and prevent further harassment of Jimmy.

78. When School District officials learned of ongoing problems, the School District took no remedial measures, despite having notice that Plaintiff continued to experience sex-based harassment in school.

79. Plaintiff suffered sex-based harassment that was severe, pervasive, and objectively offensive.

80. The sex-based harassment deprived Plaintiff of access to the educational opportunities or benefits of the school.

81. School District officials, including teacher Huberts, Principal Shoup, Assistant Superintendent Merkel, Superintendent Caniff, and Superintendent

Bearup had the authority to take remedial action to correct the sex-based harassment.

82. The School District and Defendant school officials had actual knowledge of the sex-based harassment.

83. The School District and Defendant school officials responded with deliberate indifference to the sex-based harassment.

84. Defendant school officials failed to apprise John and Jane Doe of their rights on behalf of their child under Title IX.

85. Teacher Huberts should have supervised the class in such a manner than prevented ongoing sexual abuse, and failing to prevent it, should have detected that abuse through routine monitoring of the technology she gave to the children in her class.

86. Plaintiff was so stressed by the abuse and harassment in the school environment that he developed educational, behavioral, physical, and emotional problems for which his parents sought a medical explanation and relief, even as they continued to apprise District officials of their concerns.

87. Plaintiff failed to progress academically, such that he repeated kindergarten a second time instead of moving to first grade with his cohorts, and after a second harassment-filled year in kindergarten, he was not learning at grade level.

88. Jimmy's parents had to remove him from the District for his well-being.

89. As a direct and proximate result of the harassing educational environment created by Defendants' deliberately indifferent response to the sexual assault

and subsequent harassment, as well as violations of his Fourteenth

Amendment rights, Plaintiff has suffered and continues to suffer physical,

psychological, educational, and emotional damage, and loss of standing in his

community, and damage to his reputation.

90. Plaintiff has required ongoing trauma and related counseling and medications

to address the effect of his classroom and playground trauma created through

Defendants' deliberate indifference and gross negligence.

91. Plaintiff has also been deprived of a normal childhood education due to

Defendants' conduct and the resulting educational environment.

**COUNT I**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT GRANDVILLE SCHOOL DISTRICT**
**(20 U.S.C. § 1681, *et seq*.)**
**(The School's Deliberate Indifference**
**to Alleged Sexual Harassment)**

Paragraphs one through 91 are incorporated by reference as if stated in full herein.

92. The sex-based harassment articulated in the Plaintiffs' General Allegations

was so severe, pervasive, and objectively offensive that it deprived Plaintiff of

access to educational opportunities or benefits provided by the school.

93. The Defendant School District created and/or subjected Plaintiff to a hostile

educational environment in violation of Title IX of the Education

Amendments of 1972, 20 U.S.C. § 1681(a) ("Title IX"), because

a) Plaintiff was a member of a protected class;

b) he was subjected to sexual harassment in the form of a sexual assault by

another student;

c) he was subjected to harassment based on his sex; and

d) he was subjected to a hostile educational environment created by the School District's lack of policies and procedures, and failure to properly investigate and/or address the sexual assault and subsequent harassment.

94. Defendant School District and its officials had actual knowledge of the sexual assault and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's attackers in a timely manner and consistent with its own policy and federal and state law.

95. The Defendant School District's failure to promptly and appropriately respond to alleged sexual harassment, resulted in Jimmie Doe, on the basis of his sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the District's education program in violation of Title IX.

96. Defendant School District failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward Plaintiff Jimmie Doe.

97. Defendant School District persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

98. Defendant School District engaged in a pattern and practice of behavior designed to discourage and dissuade students and parents of students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

99. Plaintiff Jimmy Doe has suffered physical and emotional distress and psychological damage including but not limited to a diagnosis of Post-

Traumatic Stress Disorder, and his character and standing in his community have suffered from the harassment fostered as a direct and proximate result of Defendant School District's deliberate indifference to his rights under Title IX.

100. Plaintiffs John and Jane Doe have suffered emotional stress in dealing with their son's sexual assault, and have had significant financial expenses in diagnosing and treating damage done to their son's physical and emotional health.

## COUNT II
## 1983 VIOLATION AS TO
## DEFENDANTS HUBERTS, SHOUP, MERKEL, AND CANIFF
## AND SUPERINTENDENT BEARUP
## (42 U.S.C. § 1983)

Paragraphs one through 100 are hereby incorporated by reference as if set forth in full herein.

101. Under the Fourteenth Amendment, Plaintiff had the right as a public-school student to personal security and bodily integrity and Equal Protection of Laws.

102. Defendants Huberts, Shoup, Merkel, Caniff, and Bearup were all state actors acting under the color of state law.

103. Defendants each subjected Plaintiff to violations of his right to personal security and bodily integrity and Equal Protection of Laws by: failing to detect the ongoing abuse, failing to investigate the minor students' misconduct; failing to appropriately discipline those perpetrators; failing to adequately train and supervise teachers and administrators; failing to inform his parents

of their rights under Title IX, and manifesting deliberate indifference to the sexual assault and ongoing harassment of Plaintiff by other students, including his assailants.

104.    The School District has and/or had unconstitutional customs or policies of a) failing to investigate evidence of criminal and tortious misconduct against School District students in the nature of violations of their right to personal security and bodily integrity and b) failing to adequately train and supervise School District employees with regard to maintaining, preserving and protecting students from violations of their right to personal security, bodily integrity, and Equal Protection of the Laws.

105.    On information and belief, the School District has followed these unconstitutional customs and policies not only with regard to Plaintiff but also with regard to criminal and tortious misconduct committed against other School District students.

106.    Defendants Huberts, Shoup, Merkel, Caniff, and Bearup are or were at the time of events complained of within, policymakers for the purpose of implementing the School District's unconstitutional policies or customs.

107.    Plaintiff Jimmy Doe has suffered physical and emotional distress and psychological damage including but not limited to a diagnosis of Post-Traumatic Stress Disorder, and his character and standing in his community have suffered from the harassment fostered as a direct and proximate result of the defendants' Defendant deliberate indifference to his rights under the Fourteenth Amendment.

108. Plaintiffs John and Jane Doe have suffered emotional stress in dealing with their son's sexual assault, and have had significant financial expenses in diagnosing and treating damage done to their son's physical and emotional health as a direct and proximate result of Defendant School District's deliberate indifference to his rights under the Fourteenth Amendment.

**COUNT III**
***MONELL* LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE**
**AS TO RESPONSE TO SEXUAL ASSAULT**
**AS TO DEFENDANT GRANDVILLE SCHOOL DISTRICT**
**(42 U.S.C. § 1983)**

Paragraphs one through 108 are hereby incorporated by reference as if set forth in full herein.

109. Defendants Huberts, Shoup, Merkel, Caniff and Bearup were "state actors" working for Grandville School District, a federally funded school system.

110. Defendants Huberts, Shoup, Merkel, Caniff and Bearup acted under "color of law" in their response, or lack thereof, to Plaintiff's sexual assault on school premises.

111. Defendants Huberts, Shoup, Merkel, Caniff and Bearup failed to preserve Plaintiff's constitutional right to equal protection as guaranteed by the Fourteenth Amendment.

112. Under the Equal Protection Clause of the Fourteenth Amendment, Plaintiff had the right to equal access to an educational environment free from harassment and discrimination.

113.    Defendants Huberts, Shoup, Merkel, Caniff, and Bearup should have known that their response to sexual assault allegations must comply with federal law, particularly as outlined in Title IX's published and widely promulgated implementing regulations.

114.    Defendants Huberts, Shoup, Merkel, Caniff, and Bearup each violated Plaintiff's right to equal access by:

> a.  Failing to take immediate and appropriate action to investigate or otherwise determine what occurred once having notice of possible sexual violence;
>
> b. Failing to take prompt and effective steps to end the sexual violence, prevent its recurrence, and address its effects, whether or not the sexual violence is the subject of a criminal investigation; and
>
> c.  Failing to provide a grievance procedure for students to file complaints of sexual discrimination, including complaints of sexual violence.

115.    Defendant Grandville Schools violated Plaintiff's Fourteenth Amendment right to equal protection by failing to properly train and supervise its employees as to these mandated investigative requirements.

116.    Plaintiff Jimmy Doe suffered physical and emotional distress and psychological damage including but not limited to a diagnosis of Post-Traumatic Stress Disorder, and his education, character and standing in his community have suffered from the harassment fostered as a direct and proximate result of the defendant School District's failure to properly train and supervise its employees as to mandated investigative requirements.

117.    Plaintiffs John and Jane Doe have suffered emotional stress in dealing with their son's sexual assault, and have incurred significant financial

expenses in diagnosing and treating damage done to their son's physical and emotional health as a direct and proximate result of Defendant School District's failure to properly train and supervise its employees to properly respond to sexual assault and harassment.

**COUNT IV
GROSS NEGLIGENCE
AS TO DEFENDANTS DISTRICT, PRINCIPAL SHOUP,
AND TEACHER HUBERTS**

Paragraphs one through 117 are hereby incorporated by reference as if set forth in full herein.

118.   Defendants Principal Shoup, Teacher Huberts and the School District had a duty to preserve the safety and welfare of all students.

119.   Defendants Shoup, Huberts and the School District breached their duty to preserve the safety and welfare of Jimmy Doe.

120.   Defendants Huberts failed to prevent, observe, and respond to Jimmy Doe's repeated sexual abuse as she supervised the classroom.

121.   Defendant Huberts failed to observe over many months the photographic evidence of that abuse that was on iPads she was responsible for overseeing per the District's Acceptable Use Policy.

122.   Defendant Huberts' conduct or a failure to act was so reckless that it demonstrated a substantial lack of concern for whether an injury would result.

123.   Defendants Shoup and School District failed to enforce the policy of monitoring the technology resources provided to students, failed to appreciate the developmentally foreseeable manner in which that technology would be used by the children.

124.    The School District's and Principal Shoup's conduct or failure to act was so reckless that it demonstrated a substantial lack of concern for whether an injury could result.

125.    Plaintiff Jimmy Doe suffered physical and emotional distress and psychological damage including but not limited to a diagnosis of Post-Traumatic Stress Disorder, and his education, character and standing in his community have suffered from the harassment fostered as a direct and proximate result of the defendants' Huberts and School District's gross negligence in supervising the classroom and technology that they gave to students.

126.    Plaintiffs John and Jane Doe have suffered emotional stress in dealing with their son's sexual assault, and have incurred significant financial expenses in diagnosing and treating damage done to their son's physical and emotional health as a direct and proximate result of Defendants' gross negligence.

**WHEREFORE**, Plaintiffs respectfully request judgment in their favor and against Defendants Grandville School District, and Defendants Huberts, Shoup, Merkel, Caniff, and Bearup as follows:

A.    Compensatory damages for Plaintiff Jimmy Doe's physical, psychological, educational, and emotional distress and damages, loss of standing in his community, damage to his reputation, and unreimbursed out of pocket expenses incurred in response to these circumstances;

B.  Compensatory damages for Plaintiffs John and Jane Doe's emotional distress and financial damages incurred in response to these circumstances;

C.  Punitive damages;

D.  Exemplary damages;

E.   Injunctive relief requiring Defendant School District to take effective steps to prevent sex-based discrimination and harassment, including sexual assault, in its education programs; fully investigate conduct that may constitute sex-based harassment and /or sexual assault; appropriately respond to all conduct that may constitute sex-based harassment and /or sexual assault; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it.

F.  Statutory interest;

G.  Costs; and

H.  Reasonable attorney fees.

### JURY DEMAND

C    Now come Plaintiffs, John and Jane Doe, for themselves and on behalf of their minor child Jimmy Doe, by and through their attorneys, Smietanka, Buckleitner, Steffes and Gezon, and demand a trial by jury.

SMIETANKA, BUCKLEITNER,
STEFFES & GEZON

/s/ Anne Buckleitner
_____
Anne Buckleitner (P59832)
Counsel for Plaintiff John and Jane Doe
4250 Chicago Drive, SW, Suite B
Grandville, MI  49418
616/667-2217

Dated:  March 20, 2018