UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DOE and JANE DOE, on
behalf of JIMMY DOE, their
minor child,

       Plaintiffs,

v.                                           Case No. 1:18-CV-309

GRANDVILLE PUBLIC SCHOOL        HON. GORDON J. QUIST
DISTRICT, et al.,

       Defendants.
_____/

## OPINION

Plaintiffs, John and Jane Doe, filed a complaint for themselves and on behalf of Jimmy Doe, their minor child, alleging claims against the Grandville Public School District and individual Defendants Ron Caniff, Roger Bearup, Scott Merkel, Tonia Shoup, and Hillary Huberts, pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Count I); 42 U.S.C. § 1983 for violation of Jimmy's rights to personal security and bodily integrity and equal protection (Counts II and III); and for gross negligence (Count IV). All claims arose out Jimmy's kindergarten classmates' taking inappropriate photographs of Jimmy on their school-issued iPads.

On September 9, 2018, the Court dismissed the official capacity claims under § 1983 against all individual Defendants, the gross negligence claim against the District, and the individual claims of John Doe and Jane Doe. (ECF No. 33.) The remaining claims were Jimmy's Title IX and § 1983 claims against the District and his gross negligence claims against individual Defendants Tania Shoup, the Principal, and Hillary Huberts, Jimmy's kindergarten teacher. Defendants Shoup and

Huberts filed a motion for summary judgment.  (ECF No. 78.)  In response to that motion, Plaintiffs stipulated to dismiss Jimmy's claims against Shoup and Huberts.  (ECF Nos. 75, 78.)

The District moves for summary judgment on the remaining Title IX and § 1983 claims. Plaintiffs have responded to the motion, and the District has filed a reply.  The Court heard oral argument on July 9, 2019.

For the following reasons, the Court will grant the District's motion and dismiss the remaining claims with prejudice.

## I. FACTS

Jimmy was a student in Huberts's kindergarten class at Century Park Learning Center during the 2014–15 school year.  Early in the school year, Jane Doe decided that, because of his young age, Jimmy would return for another year of kindergarten at Century Park for the 2015–16 school year. (ECF No. 58-10 at PageID.503–04.)

For the first time the District provided iPads to its kindergarten students during the 2014–15 school year.  (ECF No. 58-8 at PageID.434.)  All student iPads were run through an internet filtering system that prevented students from accessing inappropriate internet content and websites, as well as web-based email and cloud-based storage services.  (ECF No. 58-6 at pageID.418.)  Student use of the iPads was subject to the District's Acceptable Use Policy of Technology Resources.  (ECF No. 58-14.)  Teacher training was provided pursuant to the Technology Readiness Infrastructure Grant using modules developed by the Michigan Department of Education.  The District provided grade-specific technology goals that were formulated by the International Society for Technology and Education Standards, which included digital citizenship.  (ECF No. 58-15 at PageID.670.)

In December 2014, and again in December 2015, the Children's Assessment Center made a presentation to students at Century Park about inappropriate touching and reporting of such

conduct. In addition to hearing the lessons, students were given worksheets to take home to review with their parents. (ECF Nos. 58-2 at PageID.318; 58-3 at PageID.371; 58-10 at PageID.510–11, 114–15.)

On April 21, 2015, Huberts discovered that a group of boys had inappropriate pictures of students, including Jimmy, on their iPads. That day, the students were working on their iPads in various places around the kindergarten classroom. As Huberts was walking around the room, she noticed some boys who had suspicious looks on their faces. (ECF No. 58-9 at PageID.460.) Huberts took an iPad from one of the students to see what he was working on and noticed an inappropriate picture of another student on the iPad. Huberts immediately collected all her other students' iPads in a manner intended to avoid drawing the students' attention to what she had discovered. (*Id.*; ECF No. 58-3 at PageID.372.) She looked at each iPad to confirm that there were no other inappropriate photographs. (ECF No. 58-9 at PageID.461.) Hubert found at least two pictures, one of Jimmy, with his pants pulled down, bent over spreading his butt cheeks with his hands, with his head turned facing the camera and smiling. (ECF No. 58-3 at PageID.372.) Another picture was a close-up shot of a penis. (ECF No. 58-9 at PageID.461.) No other picture identified a student. The pictures did not show Jimmy being touched by any classmate, nor did they indicate sexual harassment. (ECF No. 58-3 at PageID.372.)

Huberts notified Principal Shoup of the photographs and gave Shoup the iPads. Shoup determined that four students had inappropriate pictures on their iPads and that the photographs were dated March 31, 2015. (ECF No. 58-2 at PageID.319.) On April 22, 2015, Shoup investigated the picture-taking activity by speaking with the students involved. (ECF No. 58-2 at PageID.319.) Huberts facilitated Shoup's interviews to avoid drawing attention to the students being interviewed. 9ECF No. 58-3 at PageID.372.) Jimmy told Shoup that it was his idea to pull his pants down. (ECF

3

No. 58-2 at PageId.319.) Jimmy said that he had pulled his pants down twice and then stopped after he talked with his mom about "the privates." (ECF No. 58-8 at PageID.433.) Jimmy said that the hands on his bottom in the picture were his own, and he did not indicate that he had been coerced, threatened, or touched by a classmate. (ECF No. 58-2 at PageID.319.) Jimmy confirmed to both Jane Doe and John Doe that he had told Shoup that it was his idea to pull his pants down. (ECF No. 58-10 at PageID.538; ECF No. 58-13 at PageID.651.) Each of the other students whom Shoup interviewed confirmed that it was Jimmy's idea to pull his pants down. (ECF No. 58-2 at PageID.319.)

In addition to interviewing the students, Shoup contacted the parents of each student involved, filed a report with the Michigan Department of Human Services, and contacted the Wyoming Police Department, which instructed Shoup to ensure that the pictures were deleted from the iPads. (*Id.* at PageID.320.) Shoup complied by having the District's Information Systems Coordinator/Network Administrator delete the pictures. (*Id.*; ECF No. 58-6 at PageID.418.) In addition, Shoup and Huberts met with Jane Doe, who expressed concern that students may be talking about the photographs. (ECF No. 58-2 at PageID.320.) During the meeting Jane Doe did not indicate that Jimmy had been inappropriately touched or sexually harassed. (*Id.*)

Jane and John Doe chose to keep Jimmy home for the remainder of the 2014–15 school year. Jimmy returned for the 2015–16 school year as a student in Huberts's kindergarten class, as Jane and John Doe had originally planned. During this school year, there was no incident or report of harassment or bullying.[1]

---

[1] Shoup testified that in September 2015, a parent of a student in Huberts's kindergarten class reported that three students, including Jimmy, pulled down their pants during recess. Shoup investigated the incident and determined that no student involved, including Jimmy, was harassed by other students. (ECF No. 58-2 at PageID.320.)

On or about August 26, 2016—shortly before Jimmy was to begin the first grade at Century Park—Jimmy told his mother that he had been touched in 2015, and she was "[s]urprised." (ECF No. 58-11 at PageID.596.) Jane Doe had not asked Jimmy about what had happened in April 2015 until that time. (ECF No. 58-10 at PageID.538.) Jimmy testified that around spring break in 2015, several of his classmates took photographs and inappropriately touched each other. (ECF No. 58-11 at PageID.608–09.) Jimmy said that they were able to avoid detection because they had "the perfect cover"—the teacher could not see them. (*Id.* at PageID. 576.)

Jane Doe informed Shoup of Jimmy's allegations, and Shoup met with Jane and John Doe on August 29, 2016. During the meeting, Jane and John Doe informed Shoup that Jimmy had told them about first and second graders asking him on the playground to show them his privates. They also told Shoup of Jimmy's recent claim that he had been touched by classmates in connection with the iPad pictures. (ECF No. 58-2 at PageID.321–22.) Shoup thereafter contacted the District's Title IX Coordinator, contacted the mother of a student Jane Doe said had witnessed the playground incident, sent an email to Jane Doe describing the initial steps of her investigation, and filed a report with the Department of Human Services. (*Id.* at PageID.322.) On September 1, 2016, Jane Doe informed Shoup that Jimmy had enrolled at Tri-Unity Christian School. Shoup's investigation failed to confirm Jimmy's new allegations.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

### III. DISCUSSION

**A.     Title IX Claim**

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance. . . ." 20 U.S.C. § 1681. Courts have recognized that Title IX implies a cause of action against a recipient of federal funds for discrimination based on sex. *See Cannon v. Univ. of Chi.*, 441 U.S. 677, 689, 99 S. Ct. 1946, 1953 (1979).

The Supreme Court has recognized that "in certain limited circumstances," student-on-student sexual harassment may violate Title IX. *Davis ex rel. LaSonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 643, 119 S. Ct. 1661, 1671 (1999). The Court held that a funding recipient may be liable when (1) "the sexual harassment was so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"; (2) the recipient had actual knowledge of the sexual harassment; and (3) the recipient was deliberately indifferent to the harassment. *Id.* at 650, 119 s. Ct. at 1675; *see also Tumminello v. Father Ryan High Sch., Inc.*, 678 F. App'x 281, 284 (6th Cir. 2017) (citing *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 444–45 (6th Cir. 2009)). A plaintiff may recover damages only if "an official who at a minimum has authority to address the alleged discrimination and to institute

6

corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 1999 (1998).

The District argues that there are several reasons why summary judgment is proper on Plaintiffs' Title IX claim. The Court need not address all of them, as two suffice. First, Plaintiffs' claim fails because it is undisputed that the District did not have prior actual notice that Jimmy was being subjected to sexual harassment. "[W]hen they accept federal funds, schools do not agree to be their students' insurers against any harassment they may face." *Doe v. Hamilton Cty. Bd. of Educ.*, 329 F. Supp. 3d 543, 556 (E.D. Tenn. 2018). Rather, as the Court held in *Davis*, a plaintiff is required to show actual knowledge—that is, "known acts of peer sexual harassment"—by an appropriate school official in order to establish Title IX liability. 526 U.S. at 648, 119 S. Ct. at 1673. This standard "is not satisfied by proof that school officials should have been aware of a potential for student-on-student harassment." *Peer ex rel. Doe v. Porterfield*, No. 1:05-cv-769, 2007 WL 9655728, at *7 (W.D. Mich. Jan. 8, 2007) (citing *Baynard v. Malone*, 268 F.3d 228, 238 (4th Cir. 2001)); *see also Kollartsch v. Mich. State Univ. Bd. of Trs.*, 298 F. Supp. 3d 1089, 1101 (W.D. Mich. 2017) (noting that "courts have rejected use of agency and negligence principles" to impose Title IX liability on funding recipients).

The District has presented undisputed proof that neither Shoup nor Huberts had any knowledge—actual or otherwise—that Jimmy was being sexually harassed prior to discovery of the inappropriate pictures on the iPads. Plaintiffs present no argument or evidence to refute the District's proof that it lacked actual knowledge of sexual harassment and, at oral argument, Plaintiffs' counsel conceded that no such evidence exists. Plaintiffs' Title IX claim fails on this basis alone.

Second, Plaintiffs fail to demonstrate that the District was deliberately indifferent to known sexual harassment of Jimmy. The Supreme Court has said that a plaintiff demonstrates deliberate indifference "only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648, 119 S. Ct. at 1674. This "is not a mere 'reasonableness' standard," *id.* at 649, 119 S. Ct. at 1674, and it does not require recipients to "purg[e] their schools of actionable peer harassment." *Id.* at 648, 119 S. Ct. at 1673. Nor is the standard met by "a collection of sloppy, or even reckless, oversights; it means evidence showing obvious, deliberate indifference to sexual abuse." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996). Whether a recipient should have conducted a better or more thorough investigation is not the proper focus. *See Sanchez v. Alvarado*, 101 F.3d 223, 229 (2d Cir. 1996) ("The alleged actions and inaction by these defendant-supervisors hardly qualify as a model for administering an efficient and effective anti-harassment policy. Even overlooking the efforts to discourage Sanchez from pressing the second complaint, their leisurely response to a serious second complaint could create a trialworthy issue—given her version of the relevant events and assuming a lack of mitigating explanations—if simple negligence were the applicable standard. But it is not.").

Shoup's response to Hubert's discovery of the inappropriate pictures on the iPads was entirely reasonable in light of the known circumstances. Shoup separately interviewed each student involved, including Jimmy, to find out the details of what occurred. Each student, including Jimmy, stated that it was Jimmy's idea to take the picture. No student said that inappropriate touching had occurred, and no other circumstance indicated that such was the case. Shoup also contacted the police, the Michigan Department of Human Services, and each involved student's parents. No further harassment occurred. On this record, there was no deliberate indifference, and Plaintiffs do not argue otherwise.

Plaintiffs do argue that three facts in dispute preclude summary judgment: (1) Shoup's investigation was not done pursuant to Title IX law or regulations; (2) Jimmy later revealed the details of what actually transpired, *i.e.*, he was touched by other students, and in her interview of Jimmy, Shoup did not ask him if he felt coerced or was touched; and (3) Shoup contacted the police department and the Department of Human Services only after Jane Doe asked Shoup why she had not done so. (ECF No. 72 at PageID.920–21.) None of these asserted factual disputes is material because all undisputed facts show that Shoup's investigation was reasonable and that the District was not deliberately indifferent. Moreover, none of these asserted facts demonstrates that the District had actual knowledge of the harassment.

Plaintiffs' only argument pertaining to their Title IX claim—which their counsel stressed at oral argument—is that because Shoup deleted the pictures from the iPad, such conduct amounts to spoliation, which supports an adverse inference that the photos evidenced a sexual assault on Jimmy and that the District violated Title IX when it took no measures to discipline the perpetrators. (ECF No. 922–23.) Even if the pictures showed inappropriate touching, as Plaintiffs intimate, Plaintiffs fail to explain how such evidence could sustain their claim. The pictures would not establish actual knowledge, and they would not undermine the conclusion that the District was not deliberately indifferent. Shoup's investigation did not cause the alleged harassment, and it is undisputed that there was no subsequent sexual harassment when Jimmy returned for the 2015–16 school year. Thus, Plaintiffs cannot argue that any shortcoming in the investigation led to, or failed to prevent, further harassment. Finally, the District had a legitimate reason to delete the pictures—protecting the privacy of the students, including Jimmy, who were involved. In short, there is no evidence of spoliation or intentional destruction of evidence because the District had no reason to believe that the pictures would be relevant to future litigation (which was not filed until almost three years after

9

Huberts first discovered the pictures), and Plaintiffs fail to show that Shoup acted with a culpable state of mind in having the pictures removed from the iPads. *See Beaven v. United States Dep't of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (reciting the elements that must be shown to warrant an adverse inference based on the destruction of evidence).

**B.      Section 1983 Municipal Liability Claim**

In Count II, Plaintiffs allege claims against the now-dismissed individual Defendants for violations of Jimmy's rights to personal security and bodily integrity and equal protection of the laws. Count III alleges a claim for *Monell*, or municipal liability, against the District based on the alleged violations in Count II. The only claim Plaintiffs address in their response is an equal protection claim. (ECF No. 72 at PageID.923.) Accordingly, Plaintiffs have abandoned the personal security and bodily integrity claim. *See Swann v. Time Warner Entm't, LP*, 126 F. Supp. 3d 973, 982 (S.D. Ohio 2015) (concluding that the plaintiffs abandoned their wrongful termination claims by failing to address them in their brief).

"To prevail in a § 1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037–38 (1978)). In the instant case, Plaintiffs rely on a failure to train theory as the basis for a policy or custom. *Id.* However, failure to train cannot be alleged in a vacuum. "Where, as here, a municipality's liability is alleged on the basis of the unconstitutional actions of its employees, it is necessary to show that the employees inflicted a constitutional harm." *Ewolski v. City of Brunswick*, 287 F.3d 492, 516 (6th Cir. 2002) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 s. Ct. 1571, 1573 (1986)); *see also Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality . . . cannot be liable under § 1983 absent an underlying constitutional violation by its officers.").

The Sixth Circuit recognizes two methods of establishing an equal protection violation in the context of a school's response to student-on-student harassment. *Stiles ex rel. D.S. v. Grainger Cty.*, 819 F.3d 834, 851 (6th Cir. 2016). The first type of claim involves "disparate treatment of one class of students who complain about bullying as compared to other classes of students." *Id.* at 851–52. The second type of claim alleges "deliberate indifference to discriminatory peer harassment." *Id.* at 852.

Plaintiffs argue that Jimmy's equal protection rights were violated because: (1) the District was deliberately indifferent to the sexual harassment against him; and (2) "the school district treated Jimmy differently than it would have had he been a female victim." (ECF No. 72 at PageID.923.) As to the gender-based claim, Plaintiffs offer no evidence—only argument and speculation—to show that the District treated Jimmy differently than it would have treated a female student if the photos had depicted a vagina instead of a penis. However, speculation and arguments of counsel are not evidence. *See Pearce v. Faurecia Exhaust Sys., Inc.*, 529 F. App'x 454, 458 (6th Cir. 2013) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and, are not enough to defeat a well-supported motion for summary judgment."). As for deliberate indifference, for the reasons discussed above, Plaintiffs fail to present any evidence showing that the District was deliberately indifferent to acts of harassment. Accordingly, the municipal liability claim fails.

**C.     Plaintiffs' Request for Additional Discovery**

Plaintiffs concede that they have no evidence to support their § 1983 claim, but request "further time to produce such evidence pursuant to Fed. R. Civ. P. 56(d)." (*Id.* at PageID.926.) Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" proceed accordingly. Plaintiffs fail to comply with Rule 56(d) by filing an affidavit of counsel. Such failure is fatal to

11

their request.  *See Gingiloski v. Commercial Recovery Servs.*, No. 2:16-cv-13273, 2017 WL 2334946, at *4 (E.D. Mich. May 30, 2017) ("If a Rule 56(d) request can be denied when supporting affidavits are too vague, it is certainly appropriate to deny Plaintiff's request, because she failed to attach an affidavit or declaration altogether.").  Moreover, Plaintiffs have had ample time to conduct discovery, and discovery has confirmed that there was no similar event in the District involving males or females.  Therefore, Plaintiffs' request for additional discovery will be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant the District's motion for summary judgment and dismiss Plaintiffs' claims with prejudice.

An Order consistent with this Opinion will enter.


Dated:  July 12, 2019                                                       /s/ Gordon J. Quist
                                                                   GORDON J. QUIST
                                                                   UNITED STATES DISTRICT JUDGE